Nevertheless, because Fridley fails to provide any facts demonstrating that these defendants conclusively knew he lacked predisposition, his § 1983 claim fails. Fridley's "knew, or should have known" standard risks turning affirmative defenses into causes of action.

### III.

Finally, we decline to credit Fridley's argument that the defendants are collaterally estopped from arguing on appeal that his arrest was supported by probable cause. "Collateral estoppel will apply where (1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issue, and (2) the issue was fully and fairly litigated in state court." *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 461 (6th Cir. 1999) (citing 28 U.S.C. § 1738). In Illinois, a party seeking to invoke the collateral estoppel doctrine must show: (1) that the issue was raised and litigated previously; (2) that the determination of the issue was a critical part of the final judgment; and (3) that the issue sought to be precluded is the same one litigated previously. *People v. Daniels*, 718 N.E.2d 149, 162 (Ill. 1999). No Illinois court has ever issued a final decision indicating whether Fridley's arrest was supported by probable cause, and therefore his argument fails.

### IV.

For these reasons, we **AFFIRM** the judgment of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0195P (6th Cir.)
File Name: 02a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MARK S. FRIDLEY; DENISE R. FRIDLEY,

     *Plaintiffs-Appellants,*

     *v.*

WALTER HORRIGHS, Investigator, Special Service Investigation Office of Secretary of State Department of Police District Three; DUANE HILL, Sgt., Illinois State Police District Nine Headquarters; FRED BROWN, Investigator, Office of Secretary Of State, Department of Police District Three; DAVE POESCHEL, Sgt., Office Secretary of State, Department of Police; FRANK WALLACE, Inspector, Office of Secretary of State Department of Police,

     *Defendants-Appellees.*

No. 00-4148

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 99-00008—Walter H Rice, Chief District Judge.

Argued: January 29, 2002

Decided and Filed: June 3, 2002

Before: RYAN and GILMAN, Circuit Judges; POLSTER,
District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** Konrad Kuczak, Dayton, Ohio, for Appellants.
Mary E. Welsh, STATE ATTORNEY GENERAL OFFICE,
Chicago, Illinois, for Appellees. **ON BRIEF:** Konrad
Kuczak, Dayton, Ohio, for Appellants. Darryl B. Simko,
STATE ATTORNEY GENERAL OFFICE, Chicago, Illinois,
for Appellees.

———————————

**OPINION**

———————————

RYAN, Circuit Judge. Mark S. Fridley appeals the district
court's grant of summary judgment, dismissing his 42 U.S.C.
§ 1983 action. Fridley brought suit against officers of the
Illinois State Police and the Illinois Secretary of State
Department of Police in their individual capacities. His wife,
Denise R. Fridley, sued the officers for loss of consortium.
Fridley alleges that when the officers placed him under arrest
for unlawfully selling vehicle identification number (VIN)
tags that had been removed from motor vehicle parts, they
lacked probable cause because they should have known that

———————————

[*] The Honorable Dan A. Polster, United States District Judge for the
Northern District of Ohio, sitting by designation.

Ohio. Be that as it may, and the district court takes issue with
this argument by Fridley, it is irrelevant to the present inquiry.
In his deposition, Fridley admitted that during his second
telephone conversation with Gluzsek, they were negotiating
over the specific parts that Fridley would sell. Although it is
not clear how the two began discussing Fridley's Corvette
parts with detached VIN tags, it is clear from Fridley's
deposition testimony that he was willing to sell Gluzsek any
of his Corvette parts, including those with their VIN tags
detached. Indeed, believing his actions were legal in Ohio,
Fridley had no reason *not* to sell Gluzsek the parts and
detached VIN tags. Fridley's hesitance to travel to Illinois
was motivated by his concern for the expense of doing so and
his fear that Gluzsek would not go through with the sale. It is
clear that once the negotiations began, Fridley willingly
offered the parts to Gluzsek.

As a second matter, and as discussed earlier, the law does
not hold that probable cause is defeated by what the officers
should have known. Here, Fridley can point to no fact or
circumstance demonstrating that the police had conclusive
knowledge that he lacked predisposition, and thus was
entrapped. The only evidence Fridley points to is his expert's
affidavit. That document concludes that the officers should
have investigated Fridley's predisposition. As stated,
however, the probable cause determination turns on what a
reasonable police officer conclusively knew about a suspect's
affirmative defenses at the time of arrest. While officers
cannot ignore exculpatory facts in reaching a probable cause
determination, *see Gardenhire v. Schubert*, 205 F.3d 303, 318
(6th Cir. 2000), it is not the rule that they must investigate a
defendant's legal defenses prior to making an arrest. While
reasonably well-trained officers should have been on notice
that the actions of these defendants, and their agent Gluzsek,
were likely to raise entrapment as a defense to any subsequent
prosecution, probable cause is found when a reasonable
officer could find that a crime is being committed. Had the
defendants not blindly relied on their informant, they may
have called off the investigation after determining that the
possibility of a successful prosecution was slim.

he lacked predisposition. Failing to sustain this burden, Fridley cannot succeed on his § 1983 action.

The facts strongly suggest that Horrighs and the other defendants knew Fridley was induced, especially when viewed in a light most favorable to Fridley. Although Horrighs did not monitor Gluzsek's conversations with Fridley, he worked directly with Gluzsek and knew that Gluzsek induced Fridley to travel to Illinois to sell the parts and VIN tags. In his deposition, Horrighs attempted to hide behind a shield of ignorance and argue that he never instructed Gluzsek on what to do or say. It is undisputed, however, that Horrighs sought and obtained approval to wire $500 to Fridley to induce him to travel to Illinois. Each of the defendants knew that if they failed to front the money, Fridley would not have traveled to Illinois and would not have engaged in an illegal act there. Horrighs and the others also knew that Gluzsek placed over 10 telephone calls to Fridley, actively encouraging him to travel to Illinois or to send the VIN tags to Illinois by mail. Fridley's original advertisement only offered to sell two Corvettes. It was upon Gluzsek's inquiries that the negotiations to sell the Corvette parts began, and it was only upon Gluzsek's insistence and wiring of $500 that Fridley undertook the trip to Illinois. Under the rule announced by *Humphrey*, it is clear that the concept of committing the offense originated with the state or its agent, and that the state actively encouraged the defendant to commit the offense for the purpose of obtaining evidence for the defendant's prosecution. The action of these officials is, to put it mildly, most unattractive.

Still, Fridley's effort to prove that he was entrapped fails, because none of the officers have been shown to have known, at the time of the arrest, that Fridley lacked predisposition. First, even in a light most favorable to Fridley, it is clear that he *was* predisposed to commit an act that was illegal in Illinois, because the sale or exchange of detached VIN tags violated Illinois law. *See* 625 Ill. Comp. Stat. 5/4-103(a)(5). Fridley implicitly accepts the conclusion that he was predisposed, and instead argues that his actions were legal in

he was protected from criminal liability by an affirmative defense.

In granting the defendants' summary judgment motion, the district court held that at the time of Fridley's arrest, the defendants had no knowledge of any facts establishing an affirmative defense to the offense for which Fridley was arrested. For the reasons set forth below, we will affirm the judgment of the district court.

## I.

Fridley, a resident of Ohio and a collector of vintage Corvette automobiles, placed an advertisement in a national automotive publication offering to sell two of his Corvettes. After seeing the advertisement, Donald Gluzsek, an informant for the Illinois Secretary of State Department of Police, contacted Fridley and learned that he also had Corvette parts for sale. Gluzsek learned that several of Fridley's Corvette parts had detached VIN tags. Fridley claims that one of the VIN tags had fallen off naturally, while others were detached when he obtained them or he detached them himself. Gluzsek made more than 10 telephone calls and a $500 cash advance to Fridley in an effort to arrange a purchase of the parts and their accompanying VIN tags. Although Fridley was originally reticent to assume the expense and trouble of traveling to Illinois to complete the sale, after repeated negotiations over the phone and Gluzsek's agreement to pay $1,000 for Fridley's expenses, with $500 in advance, the two arranged to meet in a parking lot in Springfield, Illinois, to complete the transaction.

On the morning of the sale, Gluzsek was accompanied by Walter Horrighs and Fred Brown, undercover officers with the Illinois Secretary of State Department of Police and defendants in the present action. Horrighs was the officer with primary responsibility for dealing with Gluzsek, and the remaining defendants—Duane Hill, Dave Poeschel, and Frank Wallace—either supervised Horrighs or played some supervisory role in the investigation. At the sale, Fridley offered three Corvette parts from which VIN tags had been

detached. For each part, Fridley had the VIN tags in a separate envelope, as well as valid certificates of title. There is no dispute that Fridley was the lawful owner of the parts.

Upon conclusion of the sale, the police placed Fridley under arrest for violation of 625 Ill. Comp. Stat. 5/4-103(a)(5), which criminalizes the possession and sale of VIN tags that have been removed from a vehicle.

Prior to Fridley's arrest, none of the police officers had monitored or supervised any part of Gluzsek's conversations with Fridley. Neither Horrighs nor his superiors had attempted to verify any of the information Gluzsek provided, nor had they investigated Gluzsek's prior history. No effort had been made to gather information regarding Fridley, including his predisposition to commit the act for which he was arrested. Gluzsek, who had earlier been arrested for his role in an automobile theft ring and was hoping that his effort to gather information about stolen Corvette parts would earn him leniency from the authorities, had contacted Fridley unbidden by the police.

At Fridley's preliminary hearing following the arrest, an Illinois court held that there was probable cause to find that Fridley violated section 4-103(a)(5). Subsequently, however, the prosecutor moved to dismiss the charges, and they were dismissed. Fridley's property, other than the VIN tags, was released to him some time later. Almost a year following his arrest, the VIN tags were returned to Fridley, but only upon court order. Fridley later filed this lawsuit.

Fridley's original action, heard by a magistrate judge, alleged a variety of constitutional violations, including a deprivation of Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Fridley also pled a number of Illinois common law violations, which claims were ultimately dismissed.

The magistrate judge first reviewed Fridley's § 1983 claims concerning probable cause and recommended that the district court grant the defendants' motion for summary judgment.

investigation for police officers to inquire into affirmative defenses. Second, the *Painter* court held in a footnote:

> [T]his forum emphasizes that it does not mandate that law enforcement operatives should conduct *quasi-trials* as a necessary predicate to the warrantless arrest of perpetrators . . . . Rather, this court . . . merely resolves that, where a reasonable police officer would *conclusively know* that an investigative target's behavior is protected by a legally cognizable affirmative defense, that officer lacks a legal foundation to arrest that person for that behavior.

*Id.* at n.21 (emphasis added). Again, the court was emphasizing that the probable cause determination turns on what the officers knew at the time of the arrest. In neither decision does the court hold that the probable cause determination requires an examination of a suspect's legal defenses. Even if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not "conclusively know" that the suspect is protected by the defense, then he is free to arrest the suspect provided there is probable cause to do so.

### B.

To succeed in this appeal, Fridley must produce facts which create a genuine issue of material fact regarding the police officers' knowledge of his affirmative defense. *See Anderson*, 477 U.S. at 248; *Painter*, 185 F.3d at 569 (citing *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997)). Fridley must provide facts such that a reasonable jury could conclude that: (1) the police knew that Fridley was induced by their actions, or the actions of their agent, and (2) the police knew Fridley lacked predisposition to commit the crime for which he was arrested. *See People v. Rivas*, 707 N.E.2d 159, 169 (Ill. Ct. App. 1998). A review of the record, read in a light most favorable to Fridley, demonstrates that the defendants did not know of any facts or circumstances establishing that he had an affirmative defense. While the officers may have known that Fridley was induced, they had no knowledge that

The resolution of this appeal turns largely on what the record shows the police officers knew about Fridley's alleged affirmative defense at the time he was arrested. Both parties point to *Estate of Dietrich v. Burrows*, 167 F.3d 1007 (6th Cir. 1999), and *Painter*, 185 F.3d 557, in support of their arguments. The holdings of *Dietrich* and *Painter* both involve Ohio Rev. Code § 2923.12(C), which provides an affirmative defense to the charge of carrying a concealed weapon. These cases hold that if a defendant is engaged in an activity giving rise to a reasonable cause to fear a criminal attack or engaged in a business particularly susceptible to a criminal attack, he is protected by the affirmative defense. *See Dietrich*, 167 F.3d at 1011 (citing Ohio Rev. Code § 2923.12(C)(1)); *Painter*, 185 F.3d at 565 n.10 (citing Ohio Rev. Code § 2923.12(C)(2)). Moreover, in both cases the police officers facing § 1983 liability personally knew the suspects and knew, prior to the arrest, that the suspects' professions made them susceptible to criminal attack.

In *Dietrich*, this court held that the officers did not have probable cause to arrest an individual when they knew of "facts and circumstances that conclusively established, at the time of the [individual's] arrest[]," that the individual had an affirmative defense to the crime for which he was detained. 167 F.3d at 1012. The court expounded on this rule in *Painter*, holding that probable cause determinations include "facts and circumstances establishing a statutorily legitimated affirmative justification for the suspected criminal act." 185 F.3d at 570 (citing *Dietrich*, 167 F.3d at 1013-14). In an attempt to confine that rule, however, the court made two important findings. First, it held "that a peace officer, in assessing probable cause to effect an arrest, *may not ignore information known to him* which proves that the suspect is protected by an affirmative legal justification." *Painter*, 185 F.3d at 571 (emphasis added). By the court's plain language, it is clear that a police officer is not required to inquire into facts and circumstances in an effort to discover if the suspect has an affirmative defense. The officer may not ignore information which becomes available in the course of routine investigations, but it is not a routine part of the prearrest

The magistrate judge relied on Seventh Circuit authority, about which more below, reasoning that its holdings on probable cause control because the arrest occurred in Illinois. The magistrate judge concluded that once a police officer determines that facts providing probable cause exist, the officer has no further duty to investigate exculpatory evidence. Moreover, he found that under Sixth Circuit authority, the result would be the same because the police did not "know" that they had entrapped Fridley. The district court accepted the magistrate judge's recommendation, except the conclusion that Seventh Circuit authority was binding. Applying Sixth Circuit law, the district court held that upon Fridley's arrest, the defendants did not have knowledge of exculpatory facts, and thus had probable cause to make the arrest.

## II.

### A.

Fridley has restricted his argument to the claim that his arrest violated his Fourth Amendment right to be free from warrantless arrest absent probable cause. On appeal, he claims that when the police arrested him they knew, or should have known, that they entrapped him; that the affirmative defense precluded his prosecution; and that, as a result, he was arrested without probable cause. He further argues that the district court's conclusion that the police need not have investigated his prearrest predisposition to commit the offense for which he was arrested is erroneous, because under the summary judgment standard it is sufficient to demonstrate what a reasonably well-trained officer would have known. Fridley contends that the affidavit of his expert, which the district court rejected as conclusory, demonstrates that a reasonably well-trained police officer should have inquired into Fridley's predisposition in light of the obvious incitement and inducement. As we will explain, however, Fridley's argument misstates the law of probable cause.

We review *de novo* a district court's decision to grant summary judgment. *Miller v. Am. Heavy Lift Shipping*, 231

F.3d 242, 246 (6th Cir. 2000). A grant of summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a material fact cannot be genuine unless "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision to grant summary judgment, we view all facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (West Supp. 2001). A plaintiff's claim brought under § 1983 requires proof that: (1) the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause. *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999). A police officer has probable cause if there is a "'fair probability'" that the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) (quoting *United*

*States v. Sokolow*, 490 U.S. 1, 7 (1989)), *cert. denied*, 2002 WL 171976, 70 U.S.L.W. 3482 (2002). A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform "a prudent person, or one of reasonable caution," that the suspect "has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

It is a felony in Illinois for:

A person to knowingly possess, buy, sell, exchange, give away, or offer to buy, sell, exchange or give away, any manufacturer's identification number plate . . . which has not yet been attached to or has been removed from the original or assigned vehicle.

625 Ill. Comp. Stat. 5/4-103(a)(5). However:

A person is not guilty of an offense if his or her conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of that person. However, this Section is inapplicable if the person was pre-disposed to commit the offense and the public officer or employee, or agent of either, merely affords to that person the opportunity or facility for committing an offense.

720 Ill. Comp. Stat. 5/7-12. The Seventh Circuit, interpreting this Illinois statute, has held that entrapment requires proof: (1) that the concept of committing the offense originated with the state or its agent, (2) and that the state actively encouraged the defendant to commit the offense, (3) for the purpose of obtaining evidence for the defendant's prosecution, and (4) that the defendant was not predisposed to commit the offense. *Humphrey v. Staszak*, 148 F.3d 719, 724 (7th Cir. 1998).