The **STATE** of Ohio, Appellee,

v.

**AWAD, Appellant.**

[Cite as *State v. Awad*, 164 Ohio App.3d 528, 2005-Ohio-5861.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040699.

Decided Nov. 4, 2005.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and James Michael Keeling, Assistant Prosecuting Attorney, for appellee.

David C. Wagner, for appellant.

SYLVIA S. HENDON, Judge.

{¶ 1} Following a trial to the court, defendant-appellant, Magdi Awad, was convicted of two counts of receiving stolen property. Awad was subsequently sentenced to two years of community control. On appeal, Awad does not directly challenge his sentence, but raises two assignments of error relating to the sufficiency of the evidence.

{¶ 2} Awad was one of 19 defendants named in a 105–count indictment that was the culmination of a prolonged "sting" operation conducted by the Ohio Organized Crime Commission Task Force. The aim of the operation was to break up a network of markets engaged in the receipt and distribution of stolen goods, including cigarettes.

{¶ 3} Specifically, the indictment charged Awad with four counts of receiving stolen property worth more than $500. Ultimately, Awad was convicted of two counts of receiving $544.44 worth of cigarettes from an undercover officer on one occasion and $519.19 worth of cigarettes from the same officer on a later date.

{¶ 4} Both offenses occurred while Awad was working at Glossinger's Carryout, a market targeted by the task force. On February 12, 2003, Cincinnati Police Officer Michael Medley entered the store, looking for a different clerk. Medley and Awad engaged in a conversation in which Medley offered 16 cartons of cigarettes for sale, intimating that they were stolen. A similar conversation on March 13, 2003, resulted in the second conviction. During each transaction, Medley wore a wire to record his conversations with Awad. In both instances, Awad purchased the cigarettes.

{¶ 5} Awad's assignments of error challenge the sufficiency of the evidence upon which his convictions were based. When we review a sufficiency-of-the-evidence claim, we must determine whether, after viewing the evidence in a light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[1]

{¶ 6} In his first assignment of error, Awad argues that the undercover officer's representations to him were not explicit enough to bring the transactions within the language of the statute under which he was charged. R.C. 2913.51, Ohio's receiving-stolen-property statute, provides the following:

{¶ 7} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

{¶ 8} "(B) It is not a defense to a charge of receiving stolen property in violation of this section that the property was obtained by means other than through the commission of a theft offense if the property was explicitly represented to the accused person as being obtained through the commission of a theft offense.

{¶ 9} "(C) * * * Except as otherwise provided in this division, receiving stolen property is a misdemeanor of the first degree. If the value of the property involved is five hundred dollars or more and is less than five thousand dollars, * * * receiving stolen property is a felony of the fifth degree."

{¶ 10} Awad argues that his convictions were based upon insufficient evidence because the property was neither stolen nor explicitly represented as stolen by the undercover officer. First, we point out that it was undisputed that the cigarettes offered for sale to Awad were, in fact, not stolen. The cigarettes were provided by the task force and were in the possession of the Vice Section of the Cincinnati Police Division.

{¶ 11} With the amendment of R.C. 2913.51(B) in 1999, the legislature, in effect, put its blessing on covert sting operations such as the one employed in this case.[2] In a case in which the goods are not actually obtained by theft, the issue becomes one of interpreting the evidence to determine whether it satisfies the requirement of an "explicit representation." So a careful reading of the record is necessary to determine whether Awad could have been held criminally responsible for the purchase of the purported stolen property.

{¶ 12} The testimony presented at trial permitted the trier of fact to find that an explicit representation had been made. During the first transaction, the following exchange took place:

{¶ 13} "[Medley]: Hey, you know where Greg is?

---

1. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

2. See Sub.S.B. No. 64, 148 Ohio Laws Part IV, 8588, 8590 (effective Oct. 29, 1999).

{¶ 14} "[Awad]: You got something for Greg?

{¶ 15} "[Medley]: Yeah.

{¶ 16} "[Awad]: What?

{¶ 17} "[Medley]: Cigarettes."

{¶ 18} Several moments later, Awad inspected the cigarette cartons and asked Medley about the Ohio tax stamps on them:

{¶ 19} "[Awad]: It's Ohio, right?

{¶ 20} "[Medley]: Yeah, yeah, yeah. I know you can't mess with anything but that. I wouldn't *steal 'em* if they was something else though." (Emphasis added.)

{¶ 21} Awad asked Medley about another cigarette brand, and Medley responded, "OK. See, I can only *steal* what's on the dock at the time." (Emphasis added.)

{¶ 22} As part of the conversation preceding the second transaction, a similar dialogue took place:

{¶ 23} "[Awad]: What do you have?

{¶ 24} "[Medley]: I got uh * * * eleven Newports, uh * * * two Kools and two Marlboros. I would have called, man, but * * * shoot. I *had to steal them* as quick as I could to get 'em and get up out of there. (Emphasis added.)

{¶ 25} It is difficult to imagine any language that the officer could have employed that would have been more explicit than the word "steal" used in both transactions. Even though Awad is not a native of this country, there is no evidence to indicate that he did not understand the meaning of the word "steal." On the contrary, the questions that he asked the officer clearly implied not only that he knew the meaning of the word "steal," but that he recognized the critical indicia necessary for the cigarettes to be resold in his store, i.e., the Ohio tax stamps. Moreover, the evidence showed that in each transaction, Awad paid less than half the retail value for the items. Certainly, it was reasonable for the trier of fact to infer from the evidence that Awad knew or had reasonable cause to believe that the cigarettes were stolen.

{¶ 26} Although Ohio courts have yet to interpret R.C. 2913.51(B) or to comment on the extent of the evidence necessary to establish an explicit representation as contemplated by that division, the Texas courts have spoken on a Texas statute similar in content to its Ohio counterpart.

{¶ 27} Tex.Penal Code 31.03 provides, "(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. (b) Appropriation of property is unlawful if: * * * (3) property in the custody of

any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another."

{¶ 28} In *Allen v. Texas*,[3] a Texas appellate court held that slang dialogue was sufficient proof of a representation that goods were stolen when it determined that the word "boost" was clearly understood as a substitute for "stolen." The court was required to determine the meaning of the slang word used in the defendant's statement, "I don't want the price from the store they are boosted out of," allowing the undercover police officer to testify as to the common usage of that word for stealing and noting that "everyone" understood its meaning.

{¶ 29} In the case sub judice, it is not necessary to go to those lengths to determine the purported status of the goods that were offered for sale. "Stealing" is clearly a necessary condition precedent for goods to become "stolen."

{¶ 30} It has historically been an issue for the trier of fact to determine whether an accused has knowledge that a particular item is stolen. The trial court could reasonably have inferred from the officer's use of the word "steal" that Awad was expressly put on notice that the cigarettes were purportedly stolen goods. We overrule Awad's first assignment of error.

{¶ 31} Awad additionally argues that the evidence was insufficient to establish that the value of the stolen property exceeded $500 and to elevate the crimes to the felony level. He argues that the value of the goods had to be determined as of the time of the offenses under R.C. 2913.61(A).

{¶ 32} The offenses occurred on February 12 and March 13, 2003, and Awad argues that the price lists submitted as proof of value were compiled before and after those dates and thus did not accurately represent the value of the stolen goods on the dates of the offenses.

{¶ 33} This argument fails for several reasons. First, there was no objection at trial to the admission of the price lists. Second, the trier of fact could have reasonably inferred that the goods had a fair market value of over $500 based upon the purchase prices.[4] And third, common sense and experience, which may be used when evaluating the weight to be given to any evidence, dictate that if items such as cigarettes are a certain price before and after a transaction, the items' value remains constant. Perhaps there would be some substance to Awad's argument if the only price list introduced at trial had been compiled after the crime, but that was not the case here. In fact, even if the price lists had not

---

3. *Allen v. Texas* (Tex.App.1993), 849 S.W.2d 838.

4. See *State v. Brown* (Nov. 7, 1996), 4th Dist. No. 95CA869, 1996 WL 665042.

been entered into evidence, the officer's uncontroverted testimony about the value of the goods would have alone been sufficient to establish that element of the offense.

{¶ 34} While Awad raises an interesting argument about the evidence needed for a successful prosecution under the relatively new provisions of R.C. 2913.51, the evidence in this case left no doubt about the purported nature of the goods offered for sale in the two transactions. "Steal" can have but one meaning in the context of the dialogue in this case. Further, the evidence of value introduced by way of the retail price lists that were admitted without objection clearly supported the trial court's finding of guilt on the felony level. We overrule Awad's second assignment of error.

{¶ 35} The judgment of the trial court is affirmed.

Judgment affirmed.

DOAN, P.J., and PAINTER, J., concur.