NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0039n.06

No. 12-2684

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 16, 2014
DEBORAH S. HUNT, Clerk

ALICE SUSSMAN,                          )
                                        )
    Plaintiff-Appellee,         )        ON APPEAL FROM THE
                                        )        UNITED STATES DISTRICT
    v.                          )        COURT FOR THE EASTERN
                                        )        DISTRICT OF MICHIGAN
KEITH DALTON, Sheriff Deputy,           )
                                        )
    Defendant-Appellant.        )
                                        )
                                        )

BEFORE: ROGERS, GRIFFIN, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. Defendant deputy Keith Dalton appeals the district court's denial of qualified immunity in this malicious prosecution case, arguing that plaintiff Alice Sussman failed to provide evidence demonstrating that he had made a false statement knowingly and deliberately, or with a reckless disregard for the truth. Sussman alleges that, in writing a police report implicating Sussman in a theft at a laundromat, Dalton made false statements and demonstrated a reckless disregard for the truth by relying on witness reports of what was on a surveillance tape and failing to review independently the entire surveillance tape. Although a more careful review of the tape would have revealed that Sussman was not the thief, the law imposed on Dalton no duty to comprehensively view the tape after establishing probable cause with the portion of the tape he did view. Furthermore, because an independent review of the surveillance tape reveals that Dalton did not make a substantial misrepresentation that would have been material to a finding of probable

cause, he is entitled to qualified immunity on Sussman's federal claims. Accordingly, the district court should have dismissed the federal claims on qualified immunity grounds.

Deputy Dalton was dispatched to investigate a reported theft at a laundromat where a customer had discovered that money from her wallet had been stolen. She had left the wallet unattended on a laundry machine. At the laundromat, Dalton interviewed the victim Rachel Almos, the store manager Katelyn Gall, and another witness from the scene Colleen Grinnell, who each identified Sussman as a potential suspect. Dalton wrote in his police report:

> Gall and Almos reviewed the video tape and when they observed the suspect picking up the wallet; look through it; place the wallet in her coat pocket; leave the business; return to the business; and place the wallet right back where she took it from (on the washer). Almos called 911.
>
> Interview witness, Katelyn Gall:
> Gall gave the VHS tape to me and advised that she had it stopped where the suspect was picking up the wallet. Gall advised that the time on the tape is not correct, but she believes the incident occurred around 1pm.
> . . .
> Deputy's Actions and Observations:
> I arrived and spoke with the victim and Gall regarding this incident.
> I received the VHS tape from Gall.
> I made phone contact with Grinnell and ran the license plate through LEIN, which came back to [REDACTED]
> I reviewed the tape from the point the suspect picked up the wallet; look through it; place it in her coat; and exit the business. I was able to clearing [sic] see a description of the suspect and the type of coat she was wearing. I proceeded to the suspect's residence and made contact.
> Video was copied (from the point the victim set her wallet down to the point the suspect removed the wallet) to a DVD and the original VHS tape placed into evidence.
>
> Interview with suspect, Alice Sussman:
> I arrived and made contact with a [white female] matching the description from the video. . . .

> I asked Sussman if she had been at the laundry mat and she advised me that she was there earlier. I asked how earlier and she advised between 12–3pm. . . .
> I asked to see the coat and she brought out a black over coat with a fur collar and large front pockets. The coat matched the one the suspect was wearing on the video tape. . . .
> I asked her about the wallet and she advised she knew nothing about the wallet or the missing money. I asked her if she wanted to stick with this story, because I have her on video picking up a wallet; looking through it; and placing it in her front coat pocket. Sussman asked if she could see this video, because she is being set up. I advised that she would be able to review the video at a later time.

Four days later, Dalton interviewed Sussman again and wrote a supplemental report. During the interview, Sussman explained that the video probably showed her going through her own wallet. She showed her wallet to Dalton, and Dalton noted in his report that Sussman's wallet "looked similar to the victim's wallet." Dalton provided this supplemental report to the warrant officer assigned to the case, who put the supplemental report into the package that was given to the prosecutors for review.

Nine months later, Sussman was arrested, charged with larceny, and released on personal recognizance. While copying the security footage in preparation for the preliminary hearing, Dalton noticed another suspect in the video taking money from the victim's wallet. He informed the prosecutor and defense attorney of the presence of another suspect in the footage, and the preliminary hearing was postponed. After further review of the video established that Sussman was not the culprit, the charges against Sussman were dropped.

Sussman sued Dalton and the County of Washtenaw on federal claims, brought pursuant to 42 U.S.C. § 1983, for unreasonable seizure and prosecution without probable cause and for a violation of due process under *Brady*, and on related state-law claims of false arrest, false

imprisonment, and malicious prosecution. Dalton moved for summary judgment on all of the claims, arguing that the facts did not support Sussman's claims and that Dalton was entitled to qualified immunity.

The district court granted Dalton's summary judgment motion for the malicious prosecution and due process claims but denied his motion as to all of the other claims. *Sussman v. Dalton*, No. 11-13247, 2012 WL 5874769, at *8–10 (E.D. Mich. Nov. 20, 2012). In rejecting Dalton's assertion of qualified immunity, the district court found that there were genuine issues of material fact regarding whether Dalton asserted a deliberate falsehood or showed reckless disregard for the truth by failing to view the surveillance video in its entirety and by writing a report that did not accurately report what was actually on the video. *Id.* at *6. The court also found that there was a genuine issue of material fact as to whether the alleged misrepresentations and omissions were material to the finding of probable cause. *Id.*

Dalton moved for reconsideration and presented an affidavit from the warrant officer assigned to the case that showed that Dalton had given his supplemental report to the warrant officer, controverting the district court's finding to the contrary upon which its original opinion had partially relied. The district court accepted the new fact but did not change its disposition.[1] The district court reiterated that a jury could find that Dalton was reckless in "not review[ing] the tape in its entirety until the day of Plaintiff's arraignment" and "put[ting] in his report—relied upon for the

---

[1]Accordingly, the portions of the district court's original opinion that rely on Dalton's presumed failure to file the supplemental report will be disregarded.

warrant—that witnesses and he saw something on the videotape that wasn't there." Dalton timely appealed.

We are required by the limitation on interlocutory appeals of denials of qualified immunity to accept the district court's findings on whether genuine disputes of material fact exist. *Romo v. Largen*, 723 F.3d 670, 674 (6th Cir. 2013) (quoting *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995)). Since the district court relied predominantly upon Dalton's police report and the surveillance tape, we only second-guess the district court's factual findings and inferences to the extent that review of the report and the tape reveals "blatantly contradicted facts" relied upon in the district court's opinion. *See id.* at 674 n.3 (discussing *Scott v. Harris*, 550 U.S. 372 (2007)). Here, the district court made limited discrete factual findings, most of which we may scrutinize to the extent they are based upon the report and the tape, the contents of which are incontrovertible. For example, we are able to determine the accuracy of the district court's assertion that "the tape doesn't confirm what Defendant put in his report," which is the most central and explicit finding that the district court made. *Sussman*, 2012 WL 5874769, at *5. To the extent the district court did not elaborate its factual findings or inferences in arriving at its legal conclusions, we make our best effort to assume those facts that the district court relied upon. *See Johnson*, 515 U.S. at 319.

Since Sussman was arrested pursuant to a judicially secured arrest warrant, Sussman states a constitutional claim only if she establishes "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian v. Shaw*, 335 F.3d 509,

517 (6th Cir. 2003). Because Sussman has not made the substantial showing necessary to demonstrate that Dalton made a deliberate falsehood or showed a reckless disregard for the truth, Dalton is entitled to qualified immunity.

First, Dalton did not make a deliberate falsehood by representing that the video shows Sussman returning to the laundromat and placing the wallet back where she had found it, because the only statement that this happened was in a section of the report in which Dalton reported witnesses' observations. He had no reason to suspect that the witnesses were lying, so he was entitled to include their statements in his police report. It is generally permissible to establish probable cause based on hearsay. *See United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013). Dalton did not describe observing Sussman returning with the wallet when he described his own observations of the video, which were made in a separate part of his report under the heading "Deputy's Actions and Observations." There is no confusion in Dalton's report about which facts from the video he corroborated and which facts he established by hearsay.

Second, Dalton did not show reckless disregard for the truth by failing to alert the warrant officer about portions of the tape he did not view. This court has consistently held that "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Frodge v. City of Newport*, 501 F. App'x 519, 527 (6th Cir. 2012) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir.1999)). The fact that further investigation would have exculpated Sussman is irrelevant; all that matters is whether what Dalton actually knew at the time he wrote the police report established probable cause. *See id.* at

527. Furthermore, Dalton cannot be said to have made an omission by failing to apprise the warrant officer about unreviewed portions of the tape. Probable cause determinations are made "based on the totality of information [the officer] had at the time," *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000), and nothing indicates that Dalton was aware of what was on the portions of the videotape he did not review.

Lastly, comparison of the police report and the surveillance tape that Dalton actually viewed reveals no deliberate falsehood that would strip Dalton of qualified immunity. Dalton reported that he "reviewed the video tape from the point the suspect picked up the wallet; look through it; place it in her coat; and exit the business." The portion of the video that Dalton reviewed shows Sussman walking up to and stopping in front of the laundry machine where the victim's wallet was located. The video then cuts away to another camera view from which Sussman cannot be seen. A few moments later, the video returns to Sussman, who can be seen rifling through a wallet. The video then shows Sussman putting the wallet into her coat pocket and slowly ambling out of the laundromat. Dalton reports this sequence of events accurately. Dalton's vague words "picked up the wallet" are neither a deliberate falsehood nor do they demonstrate a reckless disregard for the truth; instead, they amount to a fair description of the inferred sequence of events as shown on the video. Since Sussman must have picked up the wallet from somewhere and the video is inconclusive about precisely where, Dalton was not bending the truth in affirmatively inferring that Sussman "picked up the wallet." Regardless, the report does not even say that Dalton *observed*

Sussman pick up the wallet. Rather, it says that he "reviewed the video tape *from the point the suspect picked up the wallet*."

Sussman also failed to establish that the allegedly false statements were material to the finding of probable cause. Probable cause can be based on the following evidence in Dalton's report that is untainted by any charge of falsification or omission: The victim had told Dalton that her money was missing. Dalton had evidence that Sussman was at the scene of the crime—Sussman admits being in and out of the laundromat in the time frame in which the crime must have happened. Dalton had witness reports that the video showed Sussman leaving with the wallet and returning to place it back. Dalton used the video to verify that Sussman was seen leaving the laundromat with a wallet that appeared to be the victim's. Dalton also confirmed during his contact with Sussman at her residence that she was the woman in the video. These facts, which make no reference to Dalton's observing Sussman taking the wallet from a laundry machine, establish probable cause since together they "are sufficient to warrant a prudent person in believing" that Sussman committed the theft. *See Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (alteration omitted) (stating the standard).

The district court and Sussman's arguments do not undermine this straightforward determination of probable cause. The facts actually known by Dalton established a "probability or substantial chance of criminal activity," and Dalton was not required to go any further to establish "an actual showing of criminal activity." *See Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Most importantly, Dalton's failure to view the entire video is, as a legal matter, not material to the finding

of probable cause. As discussed above, Dalton had no duty to investigate further once probable cause was established. Moreover, probable cause cannot be defeated on the basis of knowledge that an officer does not actually have. *See Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999). In *Ahlers*, this court held that officers had sufficient probable cause despite an investigation that "was no model of thoroughness and left many reasonable sources of evidence unexplored," suggesting that the officers simply could not be held "liable for evidence which they failed to collect and, therefore, of which they were unaware." *Id.* Similarly, a finding of probable cause based on what Dalton saw on the tape cannot be defeated by Dalton's failure to watch the rest of the tape. Also, the fact that fiddling with a wallet is common in a laundromat does not defeat probable cause. Given the totality of the circumstances, Dalton could have believed that Sussman's behavior in the video was suspicious enough to establish probable cause. "[I]nnocent behavior frequently will provide the basis for a showing of probable cause." *Gates*, 462 U.S. at 243 n.13.

Dalton was accordingly entitled to qualified immunity on the § 1983 claims. As to the state law claims, the district court should consider whether supplemental jurisdiction is appropriate in light of the dismissal of the federal claims. Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims. *See Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (internal quotation marks omitted).

It is unfortunate that the innocent Sussman was arrested, but it appears from the record that her arrest was the result of bad luck rather than Dalton's deliberate overreaching. Sussman happened to stop right in front of the location of the stolen wallet at the moment the camera cut away, and when the camera cut back she could be seen with a wallet just like the victim's. It is remarkable how these minor circumstances arranged themselves in such a way that Sussman appeared guilty of the theft. Dalton, however, was entitled to qualified immunity.

We therefore reverse the district court's judgment denying qualified immunity and remand for further proceedings consistent with this opinion.