**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0634n.06

**No. 13-3681**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 15, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TYLER YOUNG and D'JANGO HENDRIX, | ) | |
| | ) | |
|     Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| SCOTT OWENS, MARK DENNEY, and JOSEPH | ) | OHIO |
| HENDRICKS, | ) | |
| | ) | |
|     Defendants-Appellees. | | |

Before:  SILER, McKEAGUE, and WHITE, Circuit Judges.

**SILER**, Circuit Judge.  Tyler Young and D'Jango Hendrix, the owners of a second-hand electronics and appliance store, brought an action under 42 U.S.C. §§ 1981, 1983 and 1985 alleging that three police officers from Colerain Township, Ohio, subjected them to an illegal search and seizure, interfered with their civil rights, and illegally arrested and prosecuted Young.  The district court granted summary judgment to the defendants on all claims, concluding that probable cause existed for the officers' actions.  We **AFFIRM**.

**I.**

The plaintiffs are two African-American men who owned and operated the Ohio Trading Company (OTC), a store that bought and sold second-hand electronics, power tools, and car stereo

equipment. The store was located in Colerain Township, Ohio, where the defendants – Scott Owen[1],

Mark Denney, and Joseph Hendricks – all serve as police officers. In May 2010, the Colerain

Township Police Department (CTPD) received information that a stolen GPS device had been

discovered at OTC. Around the same time, the police departments in Mason and Fairfield, Ohio

independently warned CTPD that Young was suspected of trafficking in stolen electronics. As a

result, CTPD commenced an investigation.

Several weeks of surveillance revealed that many suspected and former criminals were

frequently selling items to OTC. Owen sought advice from prosecutor Bill Anderson on the proper

procedures for using "controlled sales" to gather evidence. To conduct the controlled sales, Owen

and Hendricks approached a confidential informant, Randy Earls. From June 18 to June 30, 2010,

Earls sold multiple items to OTC that had been provided to the police by Home Depot. Among the

items sold were a Dewalt Five Tool Combo set valued at $549 that sold for $150, a Husky Generator

valued at $599 that sold for $150, an Echo Weed-Eater valued at $159 that sold for $40, and a

Honda Push Mower valued at $599 that sold for $100. All items were unopened, in the original

packing, and sold for significantly less than a third of their retail value. The Dewalt Tool set still

had a visible Home Depot security lanyard attached when Earls sold it to OTC.

With this information, defendants again consulted prosecutor Anderson and sought and

obtained search warrants for OTC and Young's residence. Young's residence was included because

a detective from the Mason Police Department had informed CTPD that Young had on prior

---

[1]Although the plaintiffs' complaint names "Scott Owens," the defendant's name is actually Scott Owen.

occasions sold stolen property from that location. The officers executed the searches. Young was arrested and 23 items were recovered that were later claimed by owners as having been stolen. Although Young was indicted for receiving stolen property, Anderson dropped the charges, concluding he could not prove the case.

In 2011, the plaintiffs sued under 42 U.S.C. §1983 alleging illegal arrest, illegal seizure of property, and malicious prosecution, as well as under §1981 alleging impairment of contracts (interfering with OTC's lease) and § 1985 claiming the officers were part of a civil conspiracy to force the closure of plaintiffs' business.

## II.

We review a district court's grant of summary judgment de novo. *Dixon v. University of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012).

## III.

### Alleged § 1983 Violations:  Search, Seizure and Arrest

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). As there is no dispute that the defendants were acting in their capacities as police officers, only the first prong is at issue in this case. We must determine, therefore, whether a factual dispute exists with respect to whether the plaintiffs were subjected to an illegal search and seizure, and whether Young was illegally arrested and maliciously prosecuted.

## A. Probable Cause

The critical link among the alleged § 1983 violations is the assertion by the plaintiffs that the police took various actions – searching, seizing and arresting – without probable cause. This court, of course, has long recognized that § 1983 claims arise when police officers take such actions absent probable cause. *See, e.g., Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (arrest); *Yancey v. Carroll Cnty., Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989) (search and seizure). Because Young's arrest occurred at the same time as the search and the information used to establish probable cause for both was the same, a joint analysis of its validity is appropriate.

The threshold of probable cause required to make an arrest is defined as "whether at that moment the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Relatedly, in the context of a search warrant, "[p]robable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hodge*, 714 F.3d 380, 384 (6th Cir. 2013) (internal quotation marks omitted) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

### i. Explicit Representation

The gravamen of the plaintiffs' argument against the existence of probable cause centers around what informant Earls failed to explicitly say to Young during the controlled sales–namely

that the items Earls was selling had been stolen.[2] Ohio law establishing the crime of receiving stolen

property provides as follows:

> (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
>
> (B) It is not a defense to a charge of receiving stolen property in violation of this section that the property was obtained by means other than through the commission of a theft offense if the property was explicitly represented to the accused person as being obtained through the commission of a theft offense.

Ohio Rev. Code Ann. § 2913.51. Plaintiffs argue that without the "explicit representation"

referenced in part (B), sting operations in Ohio that use items legitimately acquired by police

cannot–as a matter of law–establish the crime of receiving stolen property. *See State v. Awad*, 843

N.E.2d 201, 203-05 (Ohio Ct. App. 2005). Defendants, however, contend that while "explicit

representation" may negate a defense, it is not a charging element and thus does not factor into the

probable cause analysis. Additionally, defendants note that Ohio case law has not clearly

established what actions suffice for "explicit representation" and no case holds that non-verbal cues

alone are insufficient. Defendants have the better argument.

Probable cause does not require police officers to establish a prima facie case that a crime

has occurred or is occurring. *Gates*, 462 U.S. at 235. Moreover, this court has never held that "the

probable cause determination requires an examination of a suspect's legal defenses." *Fridley*,

291 F.3d at 873. Instead, we have held that "where a reasonable police officer would *conclusively*

---

[2]While at least one officer contends that Earls specifically said during one controlled sale that an item was "hotter than shit," a transcript of the informant's sales disputes this contention. Since the factual evidence must be viewed in favor of the non-moving party on summary judgment review, we assume Earls never *said* anything to Young that would imply the items were stolen.

*know* that an investigative target's behavior is protected by a legally cognizable affirmative defense," probable cause does not exist. *Id. (*quoting *Painter v. Robertson*, 185 F.3d 557, 571 n.21 (6th Cir. 1999)). Thus, "[e]ven if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then he is free to arrest the suspect provided there is probable cause to do so." *Id.*

In this case, while it is true that Young had a defense to the § 2913.51 charge based on Earls not specifically stating the items were stolen, that defense was not *conclusive*. First, in *Awad*, the case on which plaintiffs rely, the court notes the lack of case law commenting on the "evidence necessary to establish an explicit representation as contemplated by" the legislature's addition of § 2913.51(B) in 1999. 843 N.E.2d at 204. Furthermore, one of the factors the *Awad* court considered in its "explicit representation" analysis was the fact "that in each transaction, [the defendant] paid less than half the retail value for the items." *Id.* Along the same lines, another Ohio court found that under § 2913.51, when "goods are not actually obtained by theft, the issue becomes one of *interpreting the evidence* to determine whether ... the requirement of 'explicit representation'" is satisfied. *State v. Strunk*, No. CA2006-04-046, 2007 WL 507108, at \*7 (Ohio Ct. App. Feb. 20, 2007) (emphasis added). On habeas review in the *Strunk* case, a district court denied relief and noted that unrealistically low prices and the items' original packaging contributed to the jury's "reasonable inference that the property was 'explicitly represented' as having been stolen." *Strunk v. Warden, Chillicothe Corr. Inst.*, No. 1:07-cv-0862, 2008 WL 5521358, at \*10 (S.D. Ohio Jan. 20, 2009). In the present case, Earls repeatedly sold OTC unopened items supplied by Home Depot in their original packaging for less than a third of their retail value. This non-verbal representation by

Earls–while not as definitive as the undercover officer's statements in *Awad*–was nevertheless significant enough that defendants would not have *conclusively known* that Young had a viable affirmative defense to a § 2913.51 charge.

### ii. Factors Independent of the Controlled Sales

Although plaintiffs focus their attack on the evidentiary value of the controlled sales, significant other facts existed in this case on which an adequate basis for finding probable cause could be established. These separate factors, when considered collectively, establish a basis on their own to affirm because an otherwise flawed warrant is still valid, "if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause." *United States v. Karo*, 468 U.S. 705, 719 (1984).

First, a few weeks before the search at OTC and the arrest of Young, CTPD learned that a stolen GPS device had been recovered at OTC. While the fact that stolen property turned up for sale at their second-hand retail store does not conclusively implicate the plaintiffs, it does allow police to draw a logical inference linking them to criminal activity. "For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." *Barnes v. United States*, 412 U.S. 837, 843 (1973). Moreover, "[i]f a jury can permissibly find guilty knowledge beyond a reasonable doubt on the basis of such an inference, then surely [officers can], on the basis of a similar inference, reasonably believe that [a person] had committed a crime in order to establish probable cause for his arrest." *Rodriguez v. City of Cleveland*, 439 F. App'x 433, 452-53 (6th Cir. 2011).

Second, after the initial information about the GPS, CTPD officers began surveillance at OTC which revealed a "who's who of criminals" bringing items to the store to sell. According to the officers, the repeated return of the sellers, who were "pawning a lot of material," frequently "several times in the same week," increased their suspicion that criminal activity was occurring. While proximity to known criminals, standing alone, is not enough to establish probable cause, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), in this case the officers logically found it "atypical" that known criminals would be making multiple trips to OTC in the same week if only legitimate transactions were occurring. Moreover, probable cause exists if a "succession of superficially innocent events has proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one." *United States v. Alfano*, 838 F.2d 158, 162-63 (6th Cir. 1988).

Third, the defendant officers attached significant weight to the warnings about OTC given to them by two other police jurisdictions. A detective with the Mason Police Department, which had jurisdiction over Young's residence, told CTPD that Young had been involved in selling stolen televisions out of his house and at a flea market. A detective with the Fairfield Police Department relayed a more general tip about Young, indicating OTC was a "suspect business." While the assertions of these neighboring police detectives would have little evidentiary value, generally "[o]fficers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable cause for an arrest." *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995) (internal citations omitted).

Fourth, prior to using Earls to conduct the controlled sales, CTPD officers asked him what he knew about OTC. Earls indicated that his "understanding from the street" was that OTC was a place where stolen goods could be sold. Furthermore, Hendricks knew from first-hand experience that Earls was reliable. While a bare allegation, by itself, is insufficient to establish probable cause, *see Gardenhire v. Schubert*, 205 F.3d 303, 317 (6th Cir. 2000), in this case Earls' assertion about OTC was corroborated by the significant other information referenced above.

Collectively, this information–independent of the controlled sales– established an adequate basis for the defendants to find probable cause with respect to Young's arrest as well as for the authorization to search.[3]

### B. Malicious Prosecution

Plaintiffs also argue that defendants maliciously prosecuted Young in violation of his constitutional rights. Such a claim fails, however, "when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

---

[3]Moreover, the foregoing reasoning also illustrates that defendants are entitled, as the district court held, to qualified immunity on the unlawful search and seizure and arrest claims. An officer is generally entitled to rely on a judicially-secured warrant as satisfactory evidence of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). "To overcome an officer's entitlement to qualified immunity, however, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.* Even if we accept, for present purposes, that defendants' affidavits in support of the warrants contained a deliberately or recklessly made false statement, the statement was not, for reasons discussed above, "material" to the finding of probable cause. *See id.*, 335 F.3d at 517-18; *Sussman v. Dalton*, 552 F. App'x 488, 492-493 (6th Cir. 2014).

In this case, after the search and arrest had occurred, a grand jury indicted Young. "[I]t has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, *conclusively determines* the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (emphasis added) (internal quotation marks omitted). Ordinarily, the existence of an indictment would preclude a malicious prosecution claim. *See Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006). In this case, though, the plaintiffs contend the CTPD officers testified falsely before the grand jury with respect to the controlled sales in order to create probable cause. Although a malicious prosecution claim could arise if false testimony had indeed been given, *see Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002), here there is nothing in the record to support plaintiffs' allegation. Indeed, the grand jury testimony is not even part of the record.

Equally important, plaintiffs fail to point to any evidence supporting their contention that the defendants influenced or participated in the decision to prosecute Young. Deposition testimony from both the officers and the prosecutor confirms the former had no influence. Accordingly, the defendants "cannot be held liable for malicious prosecution when they did not make the decision to prosecute the plaintiff." *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005).

### C. Claims Against Colerain Township

In their complaint, plaintiffs also brought claims against the CTPD officers in their official capacity. "A suit against an individual in his official capacity is the equivalent of a suit against the government entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). However, "[a] municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil

rights have been violated as a direct result of that municipality's policy or custom or if a failure to train amounts to deliberate indifference to such rights.*"* *Burley*, 729 F.3d at 618 (internal quotation marks omitted).

Plaintiffs have provided no evidence to prove the existence of a policy or custom that would support a claim against the Township. Moreover, since plaintiffs failed to challenge the district court's ruling granting the Township summary judgment, they have waived their claim here. *See Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004).

## IV.

### A.  § 1981(a):  Interference with Right to Contract

Plaintiffs contend the defendants interfered with their right to make and enforce contracts – in violation of 42 U.S.C. § 1981, which prohibits racial discrimination in the "making, performance, modification, and termination of contracts." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Plaintiffs specifically allege that when OTC's landlord, Mark Capadogli, showed up during the search, CTPD officer Jennifer Sharp told him to cancel the plaintiffs' lease. This was part of a plan on the part of CTPD, plaintiffs assert, "to put OTC out of business." This claim is unsubstantiated. Even if one discounts Sharp's strong denial, none of the named defendants ever spoke to Capadogli. Denney was not even at the scene during the search and Owen and Hendricks never met Capadogli while he was there. Furthermore, plaintiffs can point to nothing concrete in the record that supports the allegation they were targeted due to their race.

### B.  § 1985(3):  Conspiracy

Plaintiffs' final claim alleges defendants conspired to interfere with their civil rights in violation of 42 U.S.C. § 1985(3), citing the same actions outlined in their § 1981(a) claim.  As the district court noted, however, the allegations are both vague and conclusory.  Moreover, plaintiffs offer no response to the defense argument that a civil conspiracy claim brought pursuant to § 1985(3) cannot be based on a deprivation of rights guaranteed by § 1981(a).  *See Stewart v. Commercial Vehicles of South Florida, Inc.*, 366 F. App'x 41, 42 (11th Cir. 2010).

### V.

The district court properly concluded that the defendant officers acted on the basis of adequate probable cause.  Plaintiffs' additional claims regarding malicious prosecution and interference with the right to contract are not supported by the record.

**AFFIRMED.**

**HELENE N. WHITE, Circuit Judge**, concurring in part and dissenting in part. Viewed in the light most favorable to Young, the evidence supports that Defendants mischaracterized the facts in the search warrant affidavits. The affidavits do not disclose that in the five sales, Young had only one interaction with Earls; they falsely assert that Earls indicated the property was either "hot" or was obtained illegally; and they completely omit that Earls repeatedly asserted that the property was not stolen. Further, Defendants' deposition testimony regarding what was said by detectives from the Mason Police Department does not support the assertion in the affidavit that Mason officers informed Defendants that "Young sold stolen property out of his residence." Additionally, whatever can be said of Kist, a reasonable officer listening to tapes of the controlled buys, which Defendants assert they did, would "conclusively know" that Young was protected by the statutory defense. *See Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002). Young made repeated inquiries and was assured both by Kist and Earls that nothing had been stolen. The record supports that the search of Young's residence and his arrest and prosecution were based on Defendants' misrepresentations and omissions. For these reasons, I would reverse the grant of summary judgment regarding the search of Young's residence and his arrest and prosecution. I agree that summary judgment was properly granted with respect to the other claims.